Garcia v. Hartford Police Dep't

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

———————————

August Term, 2012

(Argued: January 9, 2013       Decided: January 28, 2013)

Docket No. 11-4618

————————————————————————————————

EDWIN GARCIA,

*Plaintiff-Appellant*,

—v.—

HARTFORD POLICE DEPARTMENT, JOSEPH CROUGHWELL,
ROBERT CASATI, HPD, DEP. CHIEF, TIMOTHY HOGAN,
TIMOTHY PALMER, JAMES BLANCHETTE,

*Defendants-Appellees.*

————————————————————————————————

Before: KEARSE, KATZMANN, and LOHIER, *Circuit Judges*.

Plaintiff-Appellant Edwin Garcia appeals from the judgment of the United States District Court for the District of Connecticut (Thompson, *C.J.*), granting summary judgment to Defendants-Appellees on plaintiff's employment discrimination and First Amendment retaliation claims, which arise out of Garcia's employment as a sergeant with the Hartford Police Department. The district court concluded that Garcia had failed to introduce evidence suggesting that the reasons given for defendants' decision not to promote Garcia to lieutenant or for the internal investigations into Garcia's conduct were pretextual. The district court further concluded that when Garcia spoke to the press to respond to Chief Croughwell's comment that Garcia's claims of discrimination against Hispanics by Hartford police officers were overstated he was not speaking on a matter of public concern, and thus did not fall within the ambit of First Amendment protection from retaliation. With respect to Garcia's discrimination claims, we hold that he has failed to introduce factual evidence that the defendants' nondiscriminatory reasons for investigating Garcia and declining to promote him were pretextual or that Garcia's race or national origin was a motivating factor in their decisions. With respect to Garcia's First

Amendment retaliation claim, we hold that the district court erred in concluding that Garcia's statements to the press were not on matters of public concern. Nevertheless, we agree with the district court that defendant Croughwell is protected from suit on the basis of qualified immunity. Accordingly, the judgment of the district court is **AFFIRMED**.

_____

Counsel for Plaintiff-Appellant:          JURI E. TAALMAN (Timothy Brignole, *on the brief*), Brignole, Bush & Lewis, LLC, Hartford, CT.

Counsel for Defendants-Appellees:          HELEN APOSTOLIDIS, Storrs, CT.

_____

PER CURIAM:

In a matter involving employment discrimination and First Amendment retaliation claims, Plaintiff-Appellant Edwin Garcia appeals from a September 27, 2011 final judgment of the United States District Court for the District of Connecticut (Thompson, *C.J.*), granting summary judgment to the Defendants-Appellees. Garcia, a former sergeant with the City of Hartford Police Department ("Hartford PD"), seeks monetary damages under 42 U.S.C. §§ 1981, 1983, and the parallel Connecticut state employment law provisions, claiming that defendants-appellees wrongfully failed to promote him to lieutenant and instigated several internal affairs investigations into Garcia's conduct on the basis of his race or national origin. Garcia also brings a First Amendment retaliation claim against defendant-appellee Joseph Croughwell, Chief of the Hartford Police Department, claiming that Chief Croughwell retaliated against Garcia because Garcia spoke to the press about an incident Garcia alleges involved excessive force by Hartford police officers against a Hispanic citizen. On appeal, Garcia contends that the district court erred in granting summary judgment to defendants-appellees on his discrimination claims because the district court failed to take into account the report of Dr. Leonard Territo, plaintiff's expert on police practices and procedures; failed to consider the

evidence in the light most favorable to the plaintiff; and failed to apply the burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Garcia also argues that the district court erred in granting summary judgment to defendant-appellee Chief Croughwell on plaintiff's First Amendment retaliation claim because the district court incorrectly concluded that, as a matter of law, plaintiff's press conference was intended to defend his reputation only, and thus did not implicate a matter of public concern.

Having reviewed the record *de novo*, we affirm the judgment of the district court. First, we conclude that Garcia can point to no factual evidence in the record that would allow a jury to find that the defendants' proffered nondiscriminatory reasons were pretextual. Second, with respect to Garcia's retaliation claim against Chief Croughwell, although we agree with Garcia that his statement to the press implicated a matter of public concern, we affirm the judgment on the district court's alternate ground that Chief Croughwell is protected from liability by qualified immunity.

I.    **Background**

The following description is largely taken from the district court's thorough recitation of the factual record and is undisputed unless otherwise indicated. At the time of the alleged discrimination in 1994, Edwin Garcia was a police officer for the Hartford PD. In November 1990, Garcia was promoted to sergeant, making him one of the first Hispanic officers to reach the level of sergeant in the Hartford PD. In 1993, Garcia was also elected to the General Assembly of the State of Connecticut.

On April 23, 1994, Garcia was present at an incident at the El Coqui Café in Hartford, Connecticut involving Hartford PD police officers and members of the Hispanic community.

Garcia, who was off-duty that evening, was at a restaurant in Hartford with friends, including Jose Rodriguez. Cesar Cordero, the owner of the El Coqui Café, arrived at the restaurant and asked Rodriguez to come to the Café to fix his computer. Garcia accompanied Cordero and Rodriguez to the Café, and the three of them arrived at the Café at approximately 1:15AM. At 2:27AM, after Hartford's 2AM mandated closing time, Officer Donald Rodrique observed activity at the Café. He found that the doors to the Café were locked, but that people remained inside. Rodrique later stated that he intended to give the owner a warning, close the Café, and send everyone home.

When Rodrique knocked on the door, Cordero ignored him, and Rodrique called for backup. Sergeant Richard Kemmett, Officer Ezequiel Laureano, and Officer Feirravanti arrived. After the officers again knocked on the door to the Café, someone let them inside and told them that Cordero was in the basement. Laureano proceeded downstairs and found Cordero there with plaintiff Garcia. Cordero went upstairs with the officers; Garcia stayed downstairs, but was able to watch and listen to the interactions between Cordero and the officers through the bar's surveillance equipment.

Cordero was placed under arrest for allegedly hindering the officers' investigation by dimming the lights to the Café. When Kemmett attempted to place Cordero under arrest, Cordero struggled with Kemmett and ran towards the basement stairs. When Kemmett gave chase, Kemmett pushed Cordero down the stairs and the two of them became embroiled in a scuffle. Rodrique attempted to help Kemmett arrest Cordero, while Laureano kept an unknown individual from interfering. Garcia did not intervene, and instead placed a call to Chief

Croughwell, Mayor Michael Peters, and Deputy Mayor Eugenio Caro as he watched the arrest unfold. According to Garcia, Kemmett was "pummeling" and "pounding" Cordero.

After the incident, Garcia met with Croughwell, Peters, and Caro, and explained that he thought that Kemmett used excessive force against Cordero. When the meeting was over, plaintiff and Chief Croughwell agreed that no information would be given to the press because the police department would investigate the incident. Someone, however, leaked the incident to the press, and the local media began running articles about it. One article reported Chief Croughwell dismissing Garcia's complaint as "overstated." On May 4, 1994, Garcia held a press conference responding to what he deemed to be Chief Croughwell's attempt to assail his reputation. An article published shortly thereafter discussed plaintiff's press conference and how he accused fellow officers of bias in targeting a Hispanic bar.

Defendant Blanchette, an investigator with the Internal Affairs Division of the Hartford PD ("IAD"), investigated the El Coqui incident to determine whether the arrest of Cordero was lawful, whether Kemmett used excessive force, and whether Garcia acted properly. After the investigation, Garcia was charged with two violations: (1) undermining the good order, efficiency and discipline of the department; and (2) failure to take appropriate action concerning illegal activity, which was communicated to him by letter sent by Chief Croughwell on May 27, 1994.

Approximately six months later, Garcia was involved in another incident that ultimately led to disciplinary charges. On November 13, 1994, Karla Krengel, an editor with WFSB Television, visited the Hartford PD station house. When she entered the building, she saw Garcia and engaged him in conversation. Garcia asked Krengel about people who worked at the

television station, and the topic of Brian Garnett, a reporter at WFSB, came up in their conversation. Garcia said that he did not like Garnett because of a story Garnett wrote about Garcia before his election. Garcia allegedly told Krengel that "you can tell Brian that if I ever see him somewhere I'm gonna beat the - - - - out of him." Krengel was shocked and told Garnett about the conversation. Garnett filed a complaint against Garcia with IAD on December 23, 1994. The complaint reported the comments Garcia made to Krengel, and also stated that a WFSB anchorman, Dennis House, told Garnett that Garcia had made a similar statement to House when he saw Garcia in the apartment building where they both lived.

One month prior to this incident, in October 1994, the Hartford PD posted a notice to all sergeants that they had the opportunity to sit for an examination to be promoted to lieutenant. The department indicated that there were eleven positions available. Garcia took the test, and, on December 29, 1994, he was told that he had ranked third out of the forty-six sergeants who took the examination. Garcia's name was included on a list of thirteen people for Chief Croughwell to interview and consider for the eleven available lieutenant positions.

Chief Croughwell interviewed all the candidates, including Garcia, on December 30, 1994. Chief Croughwell did not promote Garcia, and informed him of his decision by letter dated January 6, 1995. Chief Croughwell's letter did not give Garcia a reason for denying him the promotion. Chief Croughwell promoted candidates ranked 1–2 and 4–12 and did not promote Garcia (who ranked 3rd) and the 13th ranked candidate. Ten out of the eleven candidates promoted were white.

On April 6, 1995, after a hearing for which Garcia was represented by counsel, the hearing officer Garcia selected found him guilty of violating the Hartford PD Code of Conduct

-6-

and recommended that Garcia be demoted from Sergeant to Police Officer. Specifically, the hearing officer concluded that by not intervening in the arrest of Cordero, either to assist the officers or to stop any police brutality, and thereby failing to take appropriate action concerning illegal activity, Garcia violated Article V, Section 22 of the Hartford PD Code of Conduct. Further, by making statements to the press that "discredit[ed]" the Hartford PD and its officers in violation of the Hartford PD media policy, the hearing officer concluded that Garcia violated Article 1, Section 1.00 of the Code of Conduct by undermining the good order, efficiency, and discipline of the police department.

On April 10, 1995, Chief Croughwell notified the plaintiff that he concurred with the hearing officer's findings, but not the recommended penalty, and instead suspended Garcia for thirty working days. The Union filed a grievance challenging the suspension, and the penalty was upheld for just cause by an arbitration panel from the Connecticut State Board of Mediation and Arbitration. The Union then filed a motion with the Connecticut State Superior Court to vacate the arbitration award on the grounds, *inter alia*, that it offended public policy by violating the First Amendment. The Superior Court denied this motion. On April 24, 1995, Garcia was additionally charged with "conduct unbecoming of an employee" and "using unnecessary, violent, abusive or profane language to citizens while on duty" in connection with the comments he made to Krengel about Garnett on November 13, 1994.

In May 1995, while Garcia was suspended, the department held a second round of lieutenant promotions, choosing from officers who had already taken the lieutenant's exam. Chief Croughwell neither interviewed Garcia nor notified Garcia that he was being considered

for promotion. On May 18, 1995, Chief Croughwell notified Garcia that he had not been promoted to lieutenant.

After another formal hearing, on November 28, 1995, Garcia was found guilty of the violations arising out of the November 13 incident. On December 18, 1995, Chief Croughwell followed the recommendation of the hearing officer and gave Garcia a written reprimand and suspended him for forty-five days. The Union filed a grievance challenging the suspension; the arbitration panel upheld the suspension for just cause. The Union then filed a motion with the Connecticut State Superior Court to vacate the arbitration award; again, the Connecticut Superior Court denied the motion. Garcia ultimately resigned from his position with the police department effective January 3, 1997, after he entered *nolo contendere* pleas in state-court prosecutions, for several counts of election law violations and witness tampering.

Garcia originally commenced the instant action on February 14, 1995. He amended his complaint on May 21, 1996, suing the Police Department, Chief Croughwell, Robert Casati, Timothy Hogan, Timothy Palmer, and James Blanchette. The defendants-appellees answered the amended complaint on September 29, 2010, and moved for summary judgment on October 5, 2010.

The district court granted defendants-appellees' motion for summary judgment in its entirety, by order dated September 26, 2011. With respect to plaintiff's discrimination claims, the district court concluded that "there is no genuine issue of material fact as to whether the plaintiff was discriminated against because of his race," as "[t]he record demonstrates that nondiscriminatory reasons existed for refusing to promote the plaintiff." Specifically, the district court noted that, at the time of the December 1994 promotions, (1) the plaintiff was awaiting a

-8-

hearing on the charges arising out of the April 23 incident, (2) the deputy chiefs had recommended Garcia not be promoted, and (3) it would have been embarrassing to the department if Garcia were promoted in the face of charges that could later be sustained. By the time of the May 1995 promotions, Chief Croughwell averred that nothing had changed, other than the fact that Garcia had been suspended, which the department argued rendered him ineligible for promotion. With respect to the IAD investigations, the district court concluded that there existed no evidence suggesting the investigations into Garcia's conduct were instigated because of his race or national origin.

The district court also concluded there were no genuine disputes of material fact that could sustain Garcia's First Amendment retaliation claim. The court determined that because Garcia spoke to the press only after Chief Croughwell had told the media Garcia had "overstated" his complaint, and because Garcia stated he was attempting to "defend" himself, "[t]he record demonstrates that the speech was to redress a personal grievance and was never a matter of public concern," thus falling outside the First Amendment protection against retaliation accorded to Garcia as a public employee. In the alternative, the district court also concluded that qualified immunity would protect Chief Croughwell from liability for the retaliation claim.

Additionally, the district court granted defendants' motion for summary judgment on Garcia's *Monell* claim against the City of Hartford and the Hartford PD; his claims of discrimination pursuant to the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60; and his claim of intentional infliction of emotional distress. Garcia appeals, contending that the district court erred in dismissing his employment discrimination claims and his First Amendment retaliation claim.

**II.      Discussion**

"We review a district court's grant of summary judgment *de novo*."  *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002).  In reviewing a summary judgment decision, we apply "the same standards applied by the district court."  *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 566 (2d Cir. 2011).  Under this standard, "[s]ummary judgment may be granted only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Id.* (quoting Fed. R. Civ. P. 56(a)).  In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party.  *See Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012).

For a claim of employment discrimination under 42 U.S.C. §§ 1981 and 1983, we apply the familiar burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004).

> [A] plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.  If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual.

*Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.3 (2003) (citation omitted).  When the defendant offers a legitimate, nondiscriminatory reason for the adverse employment action, the burden is on the plaintiff to point to evidence that reasonably supports a finding of prohibited discrimination; otherwise, the defendant is entitled to summary judgment.  *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001).  "Of course, to defeat summary judgment

-10-

. . . the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Back*, 365 F.3d at 123 (internal quotation marks and brackets omitted).

Garcia contends that defendants discriminated against him on account of his race or national origin in two ways: (1) by refusing to promote him to lieutenant; and (2) by conducting frivolous and retaliatory investigations into his conduct. We are not persuaded on either ground. We begin with Chief Croughwell's decisions not to promote Garcia. Defendants' proffered nondiscriminatory reason for these actions is that because Garcia was awaiting a hearing on the charges arising out of the April 23 incident at the El Coqui Café at the time of the first round of lieutenant promotions in December 1994, and because Chief Croughwell concluded that it would have been embarrassing to the department if Garcia was promoted in the face of charges that could later be (and were) sustained, Chief Croughwell decided that it was unwise to promote Garcia at that time. Later, by the time of the May 1995 promotions, Garcia had been suspended due to the El Coqui incident, which, according to the defendants, rendered him ineligible for promotion.

Plaintiff points to the expert report of Dr. Leonard Territo, which he argues creates a genuine dispute as to whether the defendants' proffered reasons were pretextual, and which he asserts that the district court wrongly overlooked. Dr. Territo, a professor of criminology and former police officer, offered his opinions on both Garcia's conduct and the conduct and procedures of the defendants. A submission in opposition to (or in support of) summary judgment need be considered only to the extent that it would have been admissible at trial. *See,*

*e.g.*, Fed. R. Civ. P. 56(e); *see also Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) (we review summary-judgment-related evidence rulings for "manifest error"). We are skeptical of the admissibility of many of Territo's conclusions, which frequently appear to be speculative or conclusory, and would therefore be inappropriate for consideration on summary judgment. *See Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008). Given that Garcia placed such heavy reliance on Territo's report in opposing summary judgment, however, it would have been better for the district court to state its reasons for concluding that this report did not impede summary judgment. Nevertheless, having reviewed Dr. Territo's report, we conclude that the report does not add any *facts* to the record that create a genuine dispute as to any material fact. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[A]n expert's report is not a talisman against summary judgment."); *Knight v. City of New York*, 303 F. Supp. 2d 485, 498 (S.D.N.Y. 2004) (holding that because a "report is based largely on the expert's interpretation of the factual record . . . even if admitted into evidence, [it] would not alter the factual record sufficiently to enable a reasonable juror to find [retaliation]").

Garcia argues that the district court erred in crediting Chief Croughwell's testimony that he could not promote Garcia in 1995 because Garcia was suspended at the time, which was corroborated by the affidavit of Joyce Chin, the former Principal Personnel Analyst for the City of Hartford Personnel Department. Territo's report states that, to the contrary, "in a similarly situated case, Chief Croughwell promoted Sgt. Cherniak to the rank of lieutenant even as he was suspended and under investigation for forging Court documents." However, Garcia's argument suffers from a serious flaw: Territo disavowed this recitation of the facts at his deposition.

Garcia does not acknowledge in his briefing that Territo retracted the conclusion upon which he so heavily relies, coming dangerously close to misrepresenting the record to this panel. Neither Territo's opinion nor any other evidence in the record suggests that Chief Croughwell's reasons for not promoting Garcia were false or that Chief Croughwell based his decision in part on Garcia's race or national origin.[1] To the contrary, as the district court pointed out, one of the sergeants promoted to lieutenant over Garcia was also Hispanic.

We next turn to the investigations conducted by the IAD into Garcia's conduct. Here, defendants submitted evidence showing that the IAD investigations were prompted by allegations of misconduct against Garcia. Out of these complaints, Garcia was charged in connection with two incidents: the El Coqui incident and the incident where he made threats regarding Brian Garnett to Garnett's colleague, Karla Krengel. Both charges against Garcia were ultimately substantiated. They were fully litigated as to their merits through disciplinary hearings, appeals to arbitration panels, and appeals to the Connecticut Superior Court.

Territo's conclusions about the propriety of the IAD investigations into Garcia's conduct, to the extent those conclusions are admissible or reducible to admissible evidence, do not alter the factual record in any meaningful respect. His analysis of the investigation into the El Coqui incident was based primarily on conclusory and speculative assertions in Garcia's affidavit, assertions that the district court correctly rejected as insufficient to create a genuine dispute as to any material fact given the contrary evidence in the record. *See Wyler v. United States*, 725 F.2d

---

[1] At oral argument, plaintiff's counsel suggested that Garcia's 30-day suspension, which began April 17, 1995, had terminated the day before Chief Croughwell notified Garcia that he was not being promoted on May 18, 1995. The 30-day suspension, however, was for 30 *working* days, not calendar days and, as Garcia was notified, was to "continue to and through May 29, 1995."

156, 160 (2d Cir. 1983). For example, Garcia stated in his affidavit and deposition that defendant Blanchette was motivated by his "color or national origin" when he attempted to have Garcia prosecuted for incidents where the investigations returned no proof. But, as the district court noted, there was no evidence to support the contention that Blanchette attempted to prosecute Garcia because of his race or national origin. To the contrary, the evidence shows simply that Blanchette investigated complaints against Garcia that were referred to him. Indeed, the record reflects that on at least one occasion, Blanchette found the allegation against Garcia to be without substantive merit and recommended that the matter be closed.

Additionally, some of Territo's conclusions are directly contradicted by the record. For example, in arguing that Garcia was unfairly punished for not intervening in the El Coqui incident, Garcia contends that the district court ignored that Officer Laureano was also present and, according to Territo, "did not feel the need to intervene and assist." J. App'x 483. This is an incorrect characterization of Laureano's description of the incident. Laureano testified at Garcia's disciplinary hearing that he did not assist in the arrest because he was busy preventing an unknown male from interfering, and that "it would have been helpful if there were more officers present because Lieutenant Kemmett was having difficulty [effectuating the arrest]." J. App'x 356.[2]

Similarly, although Territo concludes that the evidence shows there was no investigation into Kemmett's use of excessive force (without citation to the record), the record reflects that defendant Blanchette investigated the El Coqui incident in full, including whether Kemmett used excessive force. These are not genuine disputes. Territo's report adds no facts to the record that suggest the defendants' proffered reasons for investigating Garcia were false.

_____

[2] We note that Laureano's version of the events was disputed by Garcia.

-14-

Even accepting *arguendo* that all of Garcia's and Territo's conclusory assertions were credited, Garcia still fails to point to evidence suggesting that *discriminatory animus* was a motivating factor behind the investigations. Indeed, Territo himself speculated that someone in the IAD was out to "get" Garcia because he broke the police code of silence by speaking to the press, not because of his race or national origin. This does not show "that discrimination was the real reason" for the investigations, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993), nor does it even show that discriminatory animus was at least one of the "motivating factors" behind defendants' actions, *Back*, 365 F.3d at 123 (internal quotation marks omitted). Without any evidence that could allow a reasonable jury to find that defendants' proffered explanations for either the refusal to promote or the IAD investigations were pretextual, Garcia's discrimination claims fail.

Turning to Garcia's First Amendment retaliation claim against Chief Croughwell, we agree with Garcia that his statements to the press were on a matter of "public concern" and thus protected by the First Amendment. To prove that a public employer unlawfully retaliated against an employee for their speech in violation of the First Amendment, the plaintiff must show that (1) the speech at issue was "made as a citizen on matters of public concern rather than as an employee on matters of personal interest," *Grillo v. N.Y.C. Transit Auth.*, 291 F. 3d 231, 235 (2d Cir. 2002) (per curiam); (2) he or she suffered an adverse employment action, *Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2d Cir. 2000); and (3) "the speech was at least a substantial or motivating factor in the [adverse employment action]," *Sheppard v. Beerman*, 317 F.3d 351, 355 (2d Cir. 2003) (internal quotation marks omitted). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking

into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999).

Viewing the facts in the light most favorable to Garcia, the record shows that: (1) Garcia informed Chief Croughwell, the Mayor, and the Deputy Mayor that he thought Hartford police officers were discriminating against Hispanics and that Kemmett used excessive force against Cordero at the El Coqui Café; (2) Garcia and Chief Croughwell agreed that the matter should be handled internally and not through the media; (3) someone leaked the allegedly discriminatory incidents to the media; (4) Chief Croughwell subsequently criticized Garcia's complaints of discrimination as "overstated"; and (5) Garcia held a press conference to rebut Chief Croughwell. The district court erred in concluding that because Garcia spoke to the press to protect his reputation, his speech was not protected by the First Amendment. Whether or not Garcia held the press conference solely out of a desire to protect his reputation, he spoke about a matter of public concern, namely, whether the police department was discriminating against Hispanics. *See Connick v. Myers*, 461 U.S. 138, 148 n.8 (1983) (noting that the "right to protest racial discrimination [is] a matter inherently of public concern").

Defendants attempt to analogize this case to our decision in *Ezekwo v. N.Y.C. Health & Hospitals Corp.*, 940 F.2d 775 (2d Cir. 1991). This case is far afield from *Ezekwo*. In *Ezekwo*, we held that statements made by a medical resident airing her "personal dissatisfaction" with the competency of her residency program director were not brought under the ambit of the First Amendment by "the mere fact that one or two of [her] comments could be construed broadly to implicate matters of public concern." *Id.* at 777, 781. Here, by contrast, the core of Garcia's dissatisfaction was with the Department's handling of allegations of discrimination against Hispanics.

-16-

To hold that these statements were not a matter of public concern would unreasonably allow public employers to innoculate themselves from First Amendment retaliation claims simply by arguing that the employee spoke about an issue of public concern for "personal" reasons. As a matter of law, Garcia's speech "relat[es] to [a] matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146.

Nevertheless, we affirm the judgment of the district court on the district court's alternative ground of qualified immunity. *See Leecan v. Lopes*, 893 F.2d 1434, 1439 (2d Cir. 1990) (holding we are "free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied"). We first note that Garcia did not raise the issue of qualified immunity in his opening brief and has thus forfeited any objection to the district court's alternative ground. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief."). "Of course, we have discretion to excuse such an error if manifest injustice would otherwise result." *Id.*

Here, there is no manifest injustice that would result in affirming the judgment. Garcia argues that the record demonstrates that both Chief Croughwell's decision not to promote him and the IAD investigations were retaliation for Garcia's decision to speak to the press, and that he has therefore shown malice or reckless indifference to his federally protected rights sufficient to overcome qualified immunity. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). We disagree, for substantially the same reasons discussed in our evaluation of Garcia's discrimination claims. The record is devoid of any factual evidence suggesting that either Chief

Croughwell's decision not to promote Garcia or the IAD investigations was retaliatory in nature. To the contrary, defendants' unrebutted evidence shows legitimate justifications for both.[3]

Accordingly, there is no need for us to entertain the forfeited argument in the interests of justice.

## III.     Conclusion

Accordingly, for the foregoing reasons, the judgment of the district court is hereby

**AFFIRMED**.

---

[3] The hearing officer who conducted Garcia's disciplinary hearing for the El Coqui incident found that "Garcia's statements to the press were totally inappropriate and violated the media policy of the Hartford Police Department." Chief Croughwell concurred with the findings and imposed a 30-day suspension. This suspension (which was fully litigated as to just cause in the Connecticut state courts) fails to show that Garcia's comments to the press were a motivating factor in Chief Croughwell's decision not to promote Garcia. At the time he made that decision, Chief Croughwell explicitly told Garcia that he was concerned about his various pending disciplinary charges and investigations, including the pending charges relating to his failure to intervene in the El Coqui incident and pending investigations into the threats made against Garnett and potential violations of Connecticut election law, none of which involved an alleged exercise of Garcia's free speech rights. Specifically, Chief Croughwell noted that it would "embarrass" the Hartford PD if Garcia was promoted and those disciplinary charges were substantiated. Accordingly, there is nothing that suggests that it was not "objectively reasonable" for Chief Croughwell to believe that he was acting lawfully by exercising his discretion not to promote Garcia on these grounds. *See Gubitosi v. Kapica*, 154 F.3d 30, 33 (2d Cir. 1998) (reversing denial of qualified immunity on summary judgment for police chief accused of retaliation in violation of First Amendment where plaintiff failed to identify evidence in the record suggesting police chief fired her for engaging in protected speech, as opposed to for her disciplinary violations).