14-409-cv
Howard v. City of New York

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of March, two thousand fifteen.

PRESENT:  REENA RAGGI,
              RICHARD C. WESLEY,
              GERARD E. LYNCH,
                 *Circuit Judges.*

------------------------------------------------------------------------

DOUGLAS HOWARD,

           *Plaintiff-Appellant,*

      v.                                              No. 14-409-cv

CITY OF NEW YORK, KIEISHSHA Y. GARNES, SHERRI ROSENBERG,

           *Defendants-Appellees.*[*]

------------------------------------------------------------------------

APPEARING FOR APPELLANT:     MICHAEL G. O'NEILL, ESQ., New York, New York.

APPEARING FOR APPELLEES:     DIANA LAWLESS (Kristin M. Helmers, *on the brief), for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, New York.

---

[*] The Clerk of Court is directed to amend the official caption as shown above.

Appeal from a judgment of the United States District Court for the Southern District of New York (Jesse M. Furman, *Judge*; James C. Francis IV, *Magistrate Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on January 7, 2014, is AFFIRMED.

Plaintiff Douglas Howard, a former tennis instructor at Manhattan's East River Park, appeals from an award of summary judgment in favor of defendants on his claims of race discrimination and retaliation under 42 U.S.C. §§ 1981 and 1983. We review an award of summary judgment <u>de novo</u>, and we will affirm only if the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue of material fact. <u>See</u> Fed. R. Civ. P. 56; <u>Lynch v. City of New York</u>, 737 F.3d 150, 156 (2d Cir. 2013). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.  <u>Discrimination Claims</u>

Howard submits that the district court erred in concluding, as a matter of law, that he failed to demonstrate <u>prima facie</u> race discrimination in his claims that defendants impaired and ultimately terminated his permit to teach tennis at East River Park. These claims are evaluated under the framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Garcia v. Hartford Police Dep't</u>, 706 F.3d 120, 127 (2d Cir. 2013) (applying <u>McDonnell Douglas</u>'s Title VII framework to § 1981 and § 1983 claims).[1]

---

[1] Because § 1981 and § 1983 claims are each analyzed under <u>McDonnell Douglas</u> and we conclude that Howard's discrimination claims fail under this framework, we need not here decide whether independent recovery for race discrimination by state actors is available

2

Under this rubric, "plaintiff bears the initial burden of establishing a prima facie case of discrimination." Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008). If he does so, "the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action," id. (quoting McDonnell Douglas Corp. v. Green, 411 U.S. at 802), whereupon "the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext" for unlawful discrimination, Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014). Whether analyzed under either § 1981 or § 1983, Howard's initial burden is to present facts sufficient to support an inference of intentional race discrimination. See Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000) ("Section 1981, like [§ 1983 claims under] the Equal Protection Clause, only prohibits intentional racial discrimination."). The district court ruled that Howard failed to carry this prima facie burden because his sole evidence of adverse treatment on account of his race—"(1) a single racially motivated comment uttered by a non-decisionmaker and (2) the fact that the decisionmaker is black and he is white"—was insufficient to raise a triable issue of intentional discrimination. Howard v. City of New York, No. 12 Civ. 933 (JMF), 2014 WL 84357, at *2 (S.D.N.Y. Jan. 6, 2014), adopting in part report and recommendation, 2013 WL 6925088 (S.D.N.Y. July 3, 2013).

under § 1981. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989) (holding that the "express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units"); Anderson v. Conboy, 156 F.3d 167, 178 n.19 (2d Cir. 1998) (reserving decision as to whether § 1981(c), amended by Civil Rights Act of 1991, "creates an implied private right of action against state actors . . . statutorily overruling Jett"); see also Whaley v. City Univ. of New York, 555 F. Supp. 2d 381, 401 (S.D.N.Y. 2008) (recognizing that "Second Circuit has not yet ruled on this issue").

3

In urging otherwise, Howard points to an alleged October 2008 statement by a non-decision-making park attendant, who told Howard "we don't want your white ass here" when he was retrieving his ball basket from the park tennis building. He also alleges that the park attendants treated the previous permit holder—Don Sylva, who Howard asserts was Hispanic—more favorably than Howard by, inter alia, providing Sylva with a key to the tennis building to store belongings and guaranteeing him a tennis court for teaching upon five-minutes' notice, benefits denied Howard. Howard further asserts disparate treatment of white and non-white tennis players.

These allegations fail to create a plausible inference that Howard suffered intentional race discrimination. First, as the district court correctly concluded, the park attendant's alleged racial comment did not raise a triable issue of discrimination because the attendant had no decision-making authority in terminating Howard's permit and Howard proffered no evidence beyond mere speculation tying this statement to any decision maker. See Tomassi v. Insignia Fin. Grp., 478 F.3d 111, 115 (2d Cir. 2007) (holding that remarks by someone other than decision maker "may have little tendency to show that the decision-maker was motived by the discriminatory sentiment expressed in the remark"), abrogated on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009). Moreover, the park attendant's comment was made over ten months before Howard's permit was terminated, too remotely to support an inference that the adverse action was motivated by racial bias. See Tomassi v. Insignia Fin. Grp., 478 F.3d

4

at 115 (holding that the more remote and oblique remarks are in relation to adverse action, the less they prove discriminatory motivation).

Insofar as Howard faults the district court for focusing on the termination of his permit as the adverse action rather than considering his claimed impairment of contractual rights throughout the duration of his permit, that distinction is immaterial because the incidents to which Howard refers—generally, alleged differential treatment between Howard and Sylva—do not raise triable issues of intentional race discrimination. Indeed, the only admissible record evidence suggests that Sylva was a white man of Portuguese descent and, as such, not a comparator outside of Howard's protected group. See Ruiz v. Cnty. of Rockland, 609 F.3d 486, 493 (2d Cir. 2010) (holding that disparate treatment claim requires "showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group" (internal quotation marks omitted)). As to Howard's § 1981 claim, in any event, Howard's tennis permit explicitly both prohibited him from storing any items at the park and required him to reserve tennis courts a day in advance, undermining Howard's claim that the Park's refusal to deviate from these provisions impaired his contract rights.

Finally, the fact that Howard is white and the East River Park employees are black or Hispanic is insufficient, by itself, to raise an inference of intentional racial discrimination. See Yusuf v. Vassar Coll., 35 F.3d 709, 714 (2d Cir. 1994) (dismissing case for "lack of any specific factual support for his claim of a racial motivation" where "[plaintiff] has offered no reason . . . other than his assertion that [defendants] were white

5

and that he is Bengali"); accord Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 470 (2d Cir. 2006).

In sum, Howard has done little more than cite to his alleged mistreatment and ask the court to conclude that "it must have been related to [his] race. This is not sufficient." Lizardo v. Denny's, Inc., 270 F.3d 94, 104 (2d Cir. 2001). We therefore conclude that the district court correctly granted summary judgment to defendants on Howard's race discrimination claims.

2.      Retaliation Claim

We similarly uphold the award of summary judgment on Howard's retaliation claim under § 1983, which is analyzed under the First Amendment.[2] See Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008); Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996) (stating that First Amendment, not Equal Protection Clause, is recognized ground for § 1983 claim of retaliation following complaints of racial discrimination). We have "described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." Williams v. Town of Greenburgh, 535 F.3d at 76. Private citizens must show that retaliation was caused by the plaintiff's exercise of an "interest protected by the First Amendment." Id. (internal quotation marks omitted); see Beechwood Restorative Care Ctr. v. Leeds, 436 F.3d 147, 152 (2d Cir. 2006). Public

---

[2] Howard also identifies error in the district court's failure to analyze his § 1981 and First Amendment retaliation claims independently. Because Howard's § 1981 claim would fail for lack of causation even if analyzed independently, we identify no error in the district court's analysis. See Lizardo v. Denny's, Inc., 270 F.3d at 105 (requiring proof of causation for § 1981 retaliation claim).

6

employees, however, are held to a higher standard, requiring that their asserted First-Amendment-protected speech be on a "matter of public concern." Williams v. Town of Greenburgh, 535 F.3d at 76–77; see Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003) (holding that public employee alleging retaliation for exercise of First Amendment speech rights must initially demonstrate (1) he engaged in constitutionally protected speech because he spoke as a citizen on a matter of public concern; (2) he suffered an adverse employment action; and (3) the speech at issue was a substantial or motivating factor in the decision). Even if a plaintiff can establish such a prima facie case, "the government can avoid liability if it can show that it would have taken the same adverse action in the absence of the protected speech." Heil v. Santoro, 147 F.3d 103, 110 (2d Cir. 1998); see Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

The district court dismissed the retaliation claim for failure to establish a prima facie case, finding that, as a public permit holder, Howard was subject to, and failed to meet, the requirement that his speech be on a matter of public concern. See Howard v. City of New York, 2014 WL 84357, at *3. Howard urges us to analyze his claim as that of a private citizen, maintaining that his possession of the tennis permit did not make him a public employee. Defendants defend application of the public-employee standard, likening Howard to an independent government contractor, a status the Supreme Court has analyzed as a public employee. See Board of Cnty. Comm'rs v. Umbehr, 518 U.S. 668, 673, 676–79 (1996) (holding that independent contractors' First Amendment retaliation claims are analyzed in same manner as claims by public employees). We need not conclusively

7

decide this question because, even if we were to resolve the issue in Howard's favor, we nevertheless conclude that Howard failed to raise a triable issue of fact at the third step of analysis—that is, Howard has failed to establish a causal connection between his protected speech and the decision to terminate his permit.

"A plaintiff can establish the causal connection between protected expression and an adverse employment determination indirectly by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." Cobb v. Pozzi, 363 F.3d 89, 108 (2d Cir. 2004) (internal quotation marks omitted). Howard proffers no direct evidence of retaliatory animus, instead urging that such animus be inferred from the temporal proximity of his race discrimination complaints to the termination of his permit. See Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d Cir. 2001) ("[A] plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse . . . action." (internal quotation marks omitted)). Howard began complaining of race discrimination to East River Park personnel as early as October 2008 and continued to raise it for the ensuing ten months until his permit was terminated on August 21, 2009. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (holding that temporal proximity measured from date of "employer's knowledge of [the] protected activity"); accord Nagle v. Marron, 663 F.3d 100, 110–11 (2d Cir. 2011). While we have "not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too

8

attenuated to establish causation," Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010), Howard cannot raise a triable of causation given that his protected activity occurred for so long without any adverse action, cf. Clark County Sch. Dist. v. Breedon, 532 U.S. at 273 (citing with approval cases dismissing retaliation claims where there were three and four month intervals between protected activity and adverse employment action, and noting that temporal proximity must be "very close"). Indeed, rather than take adverse actions against Howard for his race discrimination complaints, the Park initially took his allegations seriously and conducted an investigation, which found Howard's allegations baseless. Accordingly, Howard has failed to establish causation.[3]

3.    Monell Claim

The district court also correctly granted summary judgment on Howard's municipal claim under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1977), because Howard failed to prove any underlying denial of a constitutional right, see Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).

---

[3] Magistrate Judge Francis found that the short time between Howard's final complaints in August 2009 and his permit termination later that month "may suggest a causal connection." Howard v. City of New York, 2013 WL 6925088, at *1. Even if we were to agree, defendants have proffered numerous legitimate, non-retaliatory reasons for terminating Howard's permit, including, inter alia, (1) Howard's repeated violations of the terms of his permit by failing to provide park personnel with notice of his teaching schedule, storing equipment at the park without authorization, and posting materials on the premises without permission; and (2) numerous complaints that Howard was aggressive and argumentative with park staff and others using the courts, including Howard's involvement in a physical altercation with another patron on the tennis court resulting in Howard's arrest. Thus, defendants have clearly met their burden of showing that they would have taken the same adverse action even in the absence of Howard's protected speech, see Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999), and Howard has not raised a triable issue of pretext.

4.	Conclusion

We have considered Howard's remaining arguments and conclude that they are without merit.   We therefore AFFIRM the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court