Perez de Leon-Garritt v. State University of New York at Buffalo

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18ᵗʰ day of September, two thousand nineteen.

PRESENT:
> ROBERT A. KATZMANN,
> *Chief Judge*,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

_____

Maria M. Perez de Leon-Garritt,

> *Plaintiff-Appellant*,

> v.                                                                 18-1235

State University of New York at Buffalo, State of New York, David F. Burganowski, Timothy P. Janikowski, Sandro M. Sodano, Wendy M. Guyker,

> *Defendants-Appellees.*

_____

FOR PLAINTIFF -APPELLANT:        Maria M. Perez de Leon-Garritt, pro se, Amherst, NY.

FOR DEFENDANTS -APPELLEES:        Jeffrey W. Lang, Deputy Solicitor General, Joseph M. Spadola, Assistant Solicitor General of Counsel, for Letitia James,

Attorney General, State of New York,
Albany, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Skretny, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Maria M. Perez de Leon-Garritt ("Garritt") filed a 42 U.S.C. § 1983 action against the State University of New York at Buffalo ("SUNY Buffalo"), and certain administrators and professors, alleging procedural due process and First Amendment retaliation claims.  Garritt asserted that she was improperly removed from the lab group section of one of her required courses in SUNY Buffalo's Rehabilitation Counseling Master's Degree Program (the "Program") and was retaliated against for her in-class comments and subsequent complaints to the defendants.  The district court granted the defendants' motion for summary judgment, and Garritt now appeals. We assume the parties' familiarity with the underlying facts, procedural history, and the issues on appeal.

We review the district court's grant of summary judgment de novo, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013) (per curiam).[1]  "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, there is no genuine dispute

---

[1] Unless otherwise indicated, in quoting cases, we omit all internal citations, quotation marks, footnotes, and alterations.

as to any material fact and the movant is entitled to judgment as a matter of law." *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011).

To prevail on a procedural due process claim, a plaintiff must demonstrate (1) that she was deprived of a cognizable interest in life, liberty, or property, (2) without receiving constitutionally sufficient process. *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017).[2] The district court held that Garritt was not entitled to a pre-deprivation hearing because the decision to remove her from her lab section was "random and unauthorized," and, accordingly, a post-deprivation Article 78 proceeding, N.Y. Civ. Prac. L. & R. § 7801 *et seq*., provided her with the constitutionally required process. Garritt argues that one of the defendants, Assistant Professor Sandro Sodano, was "authorized" to remove her from the lab section, so she should have been given a pre-deprivation hearing.

Ultimately, we need not resolve this point. If we were to find that the decision to remove Garritt from the lab "was part of an established state procedure, such that the availability of a post-deprivation remedy would not *automatically* satisfy due process, we would merely go on to determine what process was due" by balancing the private and governmental interests affected, as well as the risk of an erroneous deprivation. *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 466 (2d Cir. 2006) (citing *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)). Because we conclude that there is no genuine dispute that the process provided to Garritt was adequate, we need not decide whether her termination was random and unauthorized. *See Locurto*

---

[2] The parties do not dispute that professors employed by SUNY schools are state actors for purposes of § 1983. *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 744 (2d Cir. 2003) ("We think it clear that a professor employed at a state university is a state actor.").

*v. Safir*, 264 F.3d 154, 173 (2d Cir. 2001) (declining to "foray further into this legal thicket absent some real need to address the question").

Garritt's legal interest in continuing to attend the lab was minimal, particularly given the defendants' openness to helping her find an alternative way to meet the lab requirement so she could get her degree. By contrast, the state has a strong interest in maintaining flexibility to protect the mental health of students in group-counseling labs and ensuring a healthy environment in which they can learn.

In the context of a ten-day disciplinary suspension, the Supreme Court has held that an "informal give-and-take" between the student and the administrative body sufficed when it gave the student "the opportunity to characterize his conduct and put it in what he deems the proper context." *Goss v. Lopez*, 419 U.S. 565, 584 (1975). The Court approved of "far less stringent procedural requirements in the case of an academic dismissal," in part because the "educational process is not by nature adversary; instead it centers around a continuing relationship between faculty and students." *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86, 90 (1978). These deprivations were far more severe than Garritt's, who was not accused of wrongdoing and could have fulfilled her lab requirement elsewhere, so the constitutionally required process is correspondingly less.

Here, Garritt discussed at length with university staff the effect the group lab was having on her mental health and the possibility of completing that work elsewhere. Before formally informing her that she could not return to the lab, Professor Sodano emailed Garritt and told her that they were trying to schedule a meeting with her to "keep the option of staying in group open,"

4

but that there "needs to be a discussion of whether it is realistic for you to continue with the group in the first place" because "[a]t this point, it is not sounding like a good idea for you to remain in the group." App. at 421. Rather than agree to a meeting before the next lab session where she could be heard in person, Garritt responded only in writing, making clear that she wanted to stay in the lab group. Only then did Professor Sodano inform Garritt that she could no longer continue as a member of the group, reiterating his willingness to work with her to find an alternative and offering to meet in person or talk on the phone. Garritt spoke with Professor Sodano on the phone before the next lab session, and met with him in person shortly thereafter. No reasonable juror could find that Garritt did not have notice and an opportunity to respond.

Given Garritt's minimal legal interest in continuing to attend the lab, as opposed to fulfilling her educational requirement in another manner, these informal emails and meetings, together with the post-deprivation opportunity to challenge that decision in an Article 78 proceeding, provided her with the process required by the Fourteenth Amendment.

We also find no error in the district court's dismissal of Garritt's First Amendment retaliation claim. To survive a motion for summary judgment on a First Amendment retaliation claim, a plaintiff must set forth evidence demonstrating "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 106–07 (2d Cir. 2001). On the third prong, "[s]pecific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

5

Garritt has not provided any specific proof that defendants were motivated by an improper retaliatory purpose in dismissing her from the lab section. When, during her deposition, she was asked to identify the reason she was removed from the lab group, she responded: "Still to this moment, I don't know. It doesn't make sense after 650 something emails and documents, still I don't know." App. at 75–76. On appeal, for the first time, Garritt cites certain criticisms following a lab session that she speculates show an improper motive, but the cited criticisms do not reference any protected speech. And in any event, the evidence showed that Garritt was removed from the lab section based on the students' negative responses to her statements in class and in the lab section, which hindered the group's productiveness and cohesion.

We have considered Garritt's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk