19-1085-cv
*Woods v. Tompkins County*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of May, two thousand twenty.

PRESENT:    JON O. NEWMAN,
            JOSÉ A. CABRANES,
            PETER W. HALL,
                    *Circuit Judges.*

---

LANE WOODS,

                *Plaintiff-Appellant,*                          19-1085-cv

        v.

TOMPKINS COUNTY,

                *Defendant-Appellee,*

STAFKINGS HEALTHCARE SYSTEMS, INC.,

                *Defendant.*

---

FOR PLAINTIFF-APPELLANT:        Lane Woods, *pro se*, Ithaca, NY.

FOR DEFENDANT-APPELLEE:         Jonathan Wood, Tompkins County
                                Attorney, Ithaca, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Appellant Lane Woods ("Woods"), proceeding *pro se*, appeals from the District Court's grant of summary judgment in favor of Appellee Tompkins County with respect to her Americans with Disabilities Act ("ADA") claim. Woods argues that the County's failure to ensure that she received in-home personal care aide services violated Title II of the ADA by leading to a decline in her health that placed her at an increased risk of institutionalization in a nursing home. The District Court found that there was a material factual dispute regarding whether the lack of aide services increased Woods's risk of being placed in a nursing home. Nevertheless, it granted summary judgment in favor of the County because the undisputed evidence showed that the discontinuation of Woods's aide services resulted from her confrontations with the private firms that provided those services rather than the County's actions or policies, and that the County was not liable for the private firms' actions.[1] We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

I.

We review a district court's grant of summary judgment *de novo*, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity[.]" 42 U.S.C. § 12132. Regulations implementing Title II state that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). The

---

[1] The private firms referenced in this appeal are CareGivers and Stafkings Healthcare Systems, Inc., the only two private firms licensed to provide the aide services that Woods seeks.

Department of Justice is the federal agency that promulgates the ADA Title II regulations. *See* 42 U.S.C. § 12134(a).

"[U]njustified institutional isolation of persons with disabilities is a form of discrimination" prohibited by the ADA. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 600 (1999). In *Olmstead*, the Supreme Court held that the ADA's integration mandate was violated when Georgia kept patients institutionalized for several years after medical personnel determined that the patients were eligible for treatment in a less restrictive community-based setting. *See id.* at 593, 607. The ADA's "integration mandate [ ] requires a state to provide community-based treatment for disabled persons when (1) 'the State's treatment professionals determine that such placement is appropriate,' (2) 'the affected persons do not oppose such treatment,' and (3) 'the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with [similar] disabilities.'" *Davis v. Shah*, 821 F.3d 231, 262 (2d Cir. 2016) (quoting *Olmstead*, 527 U.S. at 607). "A plaintiff establishes a sufficient risk of institutionalization to make out an *Olmstead* violation if a public entity's failure to provide community services . . . will *likely* cause a decline in health, safety, or welfare that would lead to the individual's eventual placement in an institution." *Id.* at 262–63 (internal quotation marks omitted).

A.

Regardless of Woods's risk of institutionalization, the County was not liable for the discontinuation of her aide services.[2] Title II's nondiscrimination provision and integration mandate apply to "all services, programs, and activities provided or made available by public entities." *See* 28 C.F.R. § 35.102(a). Public entities may not engage in discrimination or deny services either directly or indirectly through agreements with licensees. *See* 28 C.F.R. § 35.130(a), (b)(1). However, private entities' own programs and actions are not covered by Title II. *See* 28 C.F.R. § 35.130(b)(6) ("The programs or activities of entities that are licensed or certified by a public entity are not, themselves, covered by this part."); *see also* Dep't of Justice, ADA Technical Assistance Manual II—3.7200, *available at* https://www.ada.gov/taman2.html#II-3.7200 (last visited April 25, 2020) (a state is not accountable for discrimination in the practices of a licensee if those practices are not the result of requirements or policies established by the state); *cf. Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 69 (2d Cir. 2012) (citing the ADA Technical Assistance Manual as "persuasive authority as to the ADA's meaning, unless it is plainly erroneous or inconsistent with the ADA's regulations").

Woods argues that the District Court misapplied or misinterpreted the above Title II regulations, and that its interpretation contravenes the ADA. However, she does not cite any

---

[2] Because the parties' dispute regarding Woods's risk of institutionalization is not dispositive, we decline to reach that issue. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

3

specific authority to support her position that a local public entity may be held liable for the independent actions of a private entity that is licensed by the State to provide services.

Tompkins County has not taken any action to exclude Woods from its Long-Term Care Program. To the contrary, it determined that Woods was eligible for aide services and notified the private firms of her need for such services and her eligibility for Medicaid reimbursement. Moreover, the County submits, and Woods does not dispute, that the County has no contractual arrangement with the firms to provide service; the County cannot compel the firms to provide services to Woods; the firms are authorized to provide service by virtue of a license granted by the State of New York; the County plays no role in their licensing or selection at all; the County has no role in overseeing or governing the firms; and the County's sole role with regard to the firms is to notify them of a patient's needs and to authorize payments in the amounts specified by regulation. *See* Appellee's Appendix at 109-113 (Declaration of Edward Bergman, Long Term Care/Adult Protective Services Coordinator for the Tompkins County Department of Social Services). It is not disputed that the County has done just that. *Id.* The discontinuation of Woods's aide services resulted from her conflicts with the private firms that were licensed by the State, rather than from any cognizable action or inaction of the County.

B.

Before the District Court, Woods argued that the County should contact another private agency (specifically, the Center for Disability Rights) and ask that agency to seek licensure from the State in order to provide aide services to Woods and other disabled individuals in Tompkins County. She renews a version of this argument on appeal, but it is without merit.

New York law allows for a local social services department to either provide aide services through its own staff or to contract with private agencies, although the State must approve most types of contracts. *See* 18 N.Y.C.R.R. § 505.14(d)(2). However, Woods does not argue that the County should provide aide services directly or compel the private firms to do so. Assuming that the County could take further action to provide aide services to Woods, her need for services and her desire to avoid nursing home placement do not translate into an absolute right to receive in-home aide services; they must be balanced against the County's resources and its obligations to provide a wide range of services to all qualifying individuals. *See* 28 C.F.R. 35.130(b)(7)(i) ("A public entity" need not make modifications that would "fundamentally alter the nature of the service, program, or activity."); *See Davis*, 821 F.3d at 264 ; *see also Olmstead*, 527 U.S. at 604 (construing the regulations to "allow the State to show that, in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with mental disabilities."). Soliciting another agency solely to provide aide services to Woods would amount to a "grant of special substantive rights" that is not appropriate relief under the ADA. *See Henrietta D. v. Bloomberg*, 331

4

F.3d 261, 282 (2d Cir. 2003).  Therefore, Tompkins County was entitled to judgment as a matter of law on Woods's ADA Title II claim.[3]

## CONCLUSION

We have reviewed all the arguments raised by Woods on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the March 28, 2019 order of the District Court.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[3] Woods also argues for the first time on appeal that the firms' discontinuation of aide services was motivated by discrimination based on her mental health disabilities (her obsessive-compulsive disorder and post-traumatic stress disorder) and that the firms failed to accommodate these disabilities. We decline to consider this argument. *See Harrison v. Republic of Sudan*, 838 F.3d 86, 96 (2d Cir. 2016) ("It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (internal quotation marks and alterations omitted)).