18-2888
Morgan v. Dzurenda

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2019

(Argued: September 25, 2019          Decided: April 15, 2020)

Docket No. 18-2888

_____

LLOYD GEORGE MORGAN, JR.,

*Appellant*,

v.

JAMES E. DZURENDA, COMMISSIONER, individual and official capacity, SCOTT SEMPLE, DEPUTY COMMISSIONER, individual and official capacity, ANGEL QUIROS, DISTRICT ADMINISTRATOR- NORTH, individual and official capacity, KARL LEWIS, DIRECTOR OF OFFENDER CLASSIFICATION, individual and official capacity, CHRISTINE WHIDDEN, WARDEN, individual and official capacity, CAROL CHAPDELAINE, CORRECTIONAL OFFICER, individual and official capacity, EDWARD MALDONADO, WARDEN, individual and official capacity, GARY WRIGHT, DEPUTY WARDEN OF OPERATION, individual and official capacity, SANDRA BARONE, DEPUTY WARDEN OF PROGRAMS AND TREATMENT, individual and official capacity, MCCORMICK, ADMINISTRATIVE CAPTAIN, individual and official capacity, K. GODDING, UNIT MANAGER CAPTAIN, individual and official capacity, CAPTAIN MANNING, UNIT MANAGER CAPTAIN, individual and official capacity, JEANOTT, 1ST SHIFT COMMANDER CAPTAIN, LIZON, LIEUTENANT, individual and official capacity, MALDONADO,

CORRECTIONAL OFFICER, individual and official capacity, LINDSEY, CORRECTIONAL OFFICER, individual and official capacity, CLAYTON, CORRECTIONAL OFFICER, individual and official capacity, TORRES, CORRECTIONAL OFFICER, individual and official capacity, GONZALEZ, CORRECTIONAL OFFICER, individual and official capacity, LEIPER, CORRECTIONAL OFFICER, individual and official capacity, ULM, CORRECTIONAL OFFICER, individual and official capacity,

*Defendants-Appellees.*

_____

Before: CALABRESI, POOLER, and PARK, *Circuit Judges.*

Lloyd George Morgan, Jr. appeals from the August 28, 2018 judgment of the United States District Court for the District of Connecticut (Bolden, *J.*) granting summary judgment to defendants in his lawsuit brought pursuant to 42 U.S.C. § 1983. Morgan's lawsuit alleged that his Eighth Amendment rights were violated when he was violently assaulted by a fellow inmate while imprisoned, and that defendants acted with deliberate indifference to his safety. *Morgan v. Dzurenda*, No. 3:14-cv-00966, 2018 WL 4096630 (D. Conn. Aug. 28, 2018). We agree with Morgan that he adduced sufficient evidence to raise a question of material fact on his Eighth Amendment claims against Captain Kyle Godding and Warden Carol Chapdelaine.  We affirm the district court's grant of summary judgment to the remaining defendants.

Affirmed in part, vacated and remanded in part.

_____

SHERWIN M. YODER, Carmody Torrance Sandak &
Hennessey LLP (James K. Robertson, Jr., *on the brief*),
New Haven, CT *for Plaintiff-Appellant.*

ZENOBIA GRAHAM-DAYS, Assistant Attorney
General, *for* William Tong, Attorney General, Hartford,
CT, *for Defendants-Appellees.*

POOLER, *Circuit Judge*:

Lloyd George Morgan, Jr. appeals from the August 28, 2018 judgment of

the United States District Court for the District of Connecticut (Bolden, *J.*)

granting summary judgment to defendants in his lawsuit brought pursuant to 42

U.S.C. § 1983. Morgan's lawsuit alleged that his Eighth Amendment rights were

violated when he was violently assaulted by a fellow inmate while imprisoned,

and that defendants acted with deliberate indifference to his safety. *Morgan v.

Dzurenda*, No. 3:14-cv-00966, 2018 WL 4096630 (D. Conn. Aug. 28, 2018). We

agree with Morgan that he adduced sufficient evidence to raise a question of

material fact on his Eighth Amendment claims against Captain Kyle Godding

and Warden Carol Chapdelaine. We affirm the district court's grant of summary judgment to the remaining defendants.

**BACKGROUND**

Prior to his release from custody in December 2017, Morgan served time in a variety of facilities in Connecticut. As relevant to this lawsuit, in July 2013 Morgan was transferred from the Garner Correctional Institution to the Carl Robinson Correctional Institution ("CRCI"). While at CRCI, Morgan cooperated with the correctional officers about various gang activity at the prison, developing a reputation as a snitch. In November 2013, Morgan was transferred to the Osborn Correctional Institution.

Morgan averred that "[i]mmediately upon arrival at Osborn, [he] was threatened and harassed by inmates for being a 'snitch' and a homosexual," and that he "feared for [his] safety." App'x at 264 ¶ 18. On November 14, 2013, Morgan submitted an Inmate Request Form to defendant Godding, stating (1) Morgan had worked with prison intelligence officials while imprisoned at CRCI; (2) an Osborn inmate, Gabriel Rodriguez, had called Morgan a snitch and threatened to "beat [Morgan] real badly and snap [his] neck for being a 'snitch' and a 'homo;'" (3) Rodriguez was a member of the Los Solidos gang; and (4)

4

Morgan feared Rodriguez would harm him. App'x at 265 ¶ 19. Morgan also averred that he verbally conveyed his worries about his safety to Godding on at least three occasions. He stated that Godding did not take his concerns seriously, telling Morgan to "stop being a snitch," "learn to fight like a man," and that Morgan should "stop being Lt. Columbo." App'x at 265 ¶¶ 21-23.

On December 2, 2013, Morgan submitted an Inmate Request Form to Chapdelaine, Osborn's warden. Morgan asked Chapdelaine for help, explaining that he had "been constantly threatened with harm" by Rodriguez, that Rodriguez called him "a snitch a CI and a homo," and that Morgan had asked Godding for help, to no avail. App'x at 283. Morgan wrote that he was "extremely afraid" Rodriguez would make good on his threats. App'x at 283. Morgan averred that between December 2, 2013 and January 5, 2014, he repeated his concerns to Chapdelaine verbally when she toured his cell block. During that conversation, Chapdelaine acknowledged receiving Morgan's Inmate Request Form.

On the evening of January 5, 2014, corrections officers Maritza Maldonado and Jeremy Lindsay were working the second shift in Morgan's cell block. Shortly after they came on shift, Morgan told both that he "had been threatened

5

by Inmate Rodriguez," "feared for [his] safety" and "was specifically concerned about recreation time." App'x at 266 ¶ 29. "Hours later," Morgan was let out of his cell for recreation, and went to the shower around 8:15 p.m. App'x at 266 ¶¶ 30, 31. Rodriguez was there, with another person, and began threatening Morgan, calling him a "snitch." App'x at 267 ¶ 32. Rodriguez threatened to steal Morgan's property, and then beat Morgan, choking him and repeatedly striking him in the head and face. Morgan called out "C.O.! C.O.!" hoping to get the attention of a corrections officer. App'x at 267 ¶ 35. No one came to Morgan's aid, and Rodriguez choked him so hard that Morgan could no longer scream.

Afterward, Morgan reported the assault to Maldonado, telling her that he "had been beaten by the very person [he had] warned her would hurt [him], namely, Inmate Rodriguez." App'x at 267 ¶ 37. Morgan averred that Maldonado was dismissive of his claims and failed to call in an emergency code or lock down the unit. An investigation by the prison resulted in Rodriguez being disciplined for assaulting Morgan.

Morgan brought this action pro se against 21 employees of the Connecticut Department of Correction, alleging numerous claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act, as well as a variety of state law claims. As

6

the litigation progressed, various claims were dismissed. As relevant here, what remained were only the Eighth Amendment claims of deliberate indifference against defendants Chapdelaine, Godding, Maldonado, and Lindsay, along with state law claims of intentional infliction of emotional distress against the remaining defendants. At that point, the district court appointed counsel to represent Morgan, and defendants moved for summary judgment. The district court granted the motion with respect to the federal claims, and dismissed the state law claims without prejudice, declining to exercise supplemental jurisdiction. *Morgan v. Dzurenda*, No. 3:14-cv-00966, 2018 WL 4096630 (D. Conn. Aug. 28, 2018). This appeal followed.

**DISCUSSION**

"We review a district court's grant of summary judgment *de novo*." *Brandon v. Kinter*, 938 F.3d 21, 31 (2d Cir. 2019). "Summary judgment may be granted only if the court concludes that the case presents no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. (internal quotation marks and citation omitted). "A genuine issue

exists—and summary judgment is therefore improper—where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Id.* (internal quotation marks and citation omitted). "In reviewing the district court's grant of summary judgment, we must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Id.* (internal quotation marks and citation omitted).

The Eighth Amendment prohibits the infliction of "[c]ruel and unusual punishments" on those convicted of crimes, which includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173, 178 (1976) (internal quotation marks and citations omitted). The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted). That extends to "protect[ing] prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation marks omitted); *see also Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("The Eighth Amendment . . . imposes on prison officials a duty . . . to protect

8

prisoners from violence at the hands of other prisoners." (internal quotation marks and citation omitted)).

Pursuant to *Farmer*, an inmate seeking to establish an Eighth Amendment violation for failure to protect or deliberate indifference to safety must prove (1) "that [the plaintiff] is incarcerated under conditions posing a substantial risk of serious harm," and (2) that the prison official had a "sufficiently culpable state of mind," which in "prison-conditions cases" is "one of deliberate indifference to inmate health or safety." *Id.* at 834 (internal quotation marks and citations omitted).

The "deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Id.* (internal quotation marks and citation omitted). "Second, the charged official must act with a sufficiently culpable state of mind." *Id.* "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Id.* "[A] prison official does not act in a deliberately indifferent manner unless that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference

9

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (internal quotation marks and citation omitted). As before the district court, defendants on appeal do not challenge whether Morgan raised a question of material fact as to whether he was incarcerated "under conditions posing a substantial risk of serious harm." *See Morgan*, 2018 WL 4096630, at \*8. Our analysis thus focuses on whether Morgan raised a question of material fact as to whether the defendants acted with "deliberate indifference to [Morgan's] health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks and citation omitted).

The district court focused its analysis of Morgan's claims against Chapdelaine and Godding under the doctrine of supervisory liability. *See Morgan*, 2018 WL 4096630, at \*8-10. Generally, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). We have permitted plaintiffs suing under Section 1983, however, to establish the "personal involvement" of a supervisory defendant in the alleged constitutional deprivations of her subordinates. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Here, while Chapdelaine and Godding both held supervisory roles at

10

Osborn, Morgan seeks to hold them liable only for acts that they themselves committed. *See Farmer*, 511 U.S. at 833 (noting that generally, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners" (internal quotation marks, alterations, and citation omitted)). The crux of Morgan's allegations against Chapdelaine and Godding is that they violated the Eighth Amendment by ignoring his pleas for help. Morgan nowhere suggests that Chapdelaine, Godding, or any other defendant improperly allowed a subordinate prison official to commit a constitutional violation. The doctrine of supervisory liability is therefore not implicated.

We hold that the district court erred in dismissing Morgan's claims against Chapdelaine and Godding on the ground that neither was "on notice that . . . Morgan faced an unreasonable risk to his safety." *Morgan*, 2018 WL 4096630, at * 8; *see also id.* at *10. The Inmate Request Forms Chapdelaine and Godding acknowledged receiving were detailed and explicit regarding the threat Morgan believed Rodriguez posed. In the Inmate Request Form sent to Godding, Morgan explained that he recently cooperated with prison officials in providing intelligence against gang members, that Rodriguez was involved with the gangs, and that Rodriguez threatened to "beat [Morgan] real badly and snap[]

11

[Morgan's] neck" for being "a snitch." App'x at 281. Morgan also stated that Rodriguez "has constantly been hostile and threatening me. I fear for my safety." App'x at 281. Similarly, in the Inmate Request Form he submitted to Chapdelaine, Morgan stated that he "[has] been constantly threaten[ed] with bodily harm by" Rodriguez, and he "fear[s] for [his] safety." App'x at 283. Morgan reported that Rodriguez has "called [him] a snitch a CI and a Homo; I am extremely afraid he will carry out his threats if he is not moved." App'x at 283. Morgan also told Chapdelaine that he had reported the threats to Godding to no avail. Finally, Morgan orally conveyed his concerns regarding the threat Rodriguez posed to his safety to both Chapdelaine and Godding. In response, Godding made dismissive remarks to Morgan, which Morgan relayed to Chapdelaine in his Inmate Request Form. Chapdelaine ignored these requests for help. These actions reflect Chapdelaine and Godding's subjective awareness of, and deliberate indifference to, Morgan's specific, repeated, and urgent expressions of fear for his safety. Taken together, we find that Morgan raised a question of material fact as to whether "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," such that a trier of fact could find that Chapdelaine and Godding

"had actual knowledge of the risk" posed by Rodriguez. *Farmer*, 511 U.S. at 842-43 (internal quotation marks and citation omitted); *cf., e.g., Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999) ("[F]acts were made known to the defendants, and the risk they presented were sufficiently obvious that a jury could conclude that the defendants drew the requisite inferences.").

We reach a different conclusion with regard to officers Lindsay and Maldonado. Morgan's warnings to those officers lacked detail and failed to notify them of "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Accordingly, we affirm the grant of summary judgment to Lindsay and Maldonado.

**CONCLUSION**

We vacate the grant of summary judgment to defendants Chapdelaine and Godding on Morgan's Eighth Amendment claims, affirm the district court's disposition as to all other defendants, and remand for further proceedings consistent with this opinion.