20-1677
*Edwards v. Semple*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of May, two thousand twenty-one.

PRESENT:   Dennis Jacobs,
           Robert A. Katzmann,
           Steven J. Menashi,
                *Circuit Judges.*

_____

M.A. EDWARDS,

      *Plaintiff Appellant,*

    v.                                                  No. 20-1677

BLACK, UNIT MANAGER CAPTAIN, ALL SUED IN OFFICIAL AND INDIVIDUAL CAPACITY, GETCHEL, CORRECTION OFFICER, ALL SUED IN OFFICIAL AND

INDIVIDUAL CAPACITY, GINA BARNES, CORRECTIONAL OFFICER, ALL SUED IN OFFICIAL AND INDIVIDUAL CAPACITY,

        *Defendants Appellees,*

SEMPLE, CONN., ALL SUED IN OFFICIAL AND INDIVIDUAL CAPACITY, MULLIGAN, WARDEN, ALL SUED IN OFFICIAL AND INDIVIDUAL CAPACITY, LIGHTNER, MRS., ALL SUED IN OFFICIAL AND INDIVIDUAL CAPACITY, MAGGIA, POP. MAN.,

        *Defendants.*

_____

| | |
|---|---|
| *For Plaintiff Appellant*: | M.A. Edwards, pro se, Uncasville, CT. |
| *For Defendants Appellees*: | Clare Kindall, Solicitor General, Janelle R. Medeiros, Assistant Attorney General, *for* William Tong, Attorney General of the State of Connecticut, Hartford, CT. |

Appeal from a judgment of the United States District Court for the District of Connecticut (Covello, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

M.A. Edwards, pro se and incarcerated, sued several employees of the MacDougall-Walker Correctional Institution ("MWCI"), including Captain Black (a unit manager), Officer Getchel (a corrections officer), and Nurse Burns (a correctional nurse). He asserted First and Eighth Amendment claims under 42 U.S.C. § 1983, and negligence under state law, alleging that the defendants failed to protect him from an attack by another inmate—Davis—which occurred following Edwards's medical appointment on September 15, 2017 (the "2017 altercation"). Edwards and Davis had previously fought in 2012 while they were housed at another prison (the "2012 altercation"), after which the Offender Classification and Population Management unit ("OCPM") issued a directive—a "separation profile"—that Edwards and Davis remain apart from each other. Edwards argued that the defendants were deliberately indifferent to his safety when they disregarded that separation profile and facilitated the 2017 altercation in retaliation for his filing of unrelated grievances and lawsuits. Edwards twice moved to add a supervisory liability claim against OCPM director David Maiga,

3

but the district court denied him leave. The district court granted the defendants' motion for summary judgment. Edwards appealed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I

We review a grant of summary judgment *de novo*, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126-27 (2d Cir. 2013) (per curiam). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

As an initial matter, Edwards does not challenge the district court's grant of summary judgment on his First Amendment retaliation claim because he fails to mention it in his brief on appeal. He has therefore waived any challenge to that ruling. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92-93 (2d Cir. 1995). Additionally, as to his state-law negligence claim, he does not argue that the defendants' actions were negligent; rather, he claims that the actions were

"wanton, reckless or malicious," and this "highly unreasonable conduct" goes "beyond negligence." Appellant's Br. at 14. As the district court observed, this allegation of reckless conduct is another articulation of Edwards's deliberate indifference Eighth Amendment claims that, as discussed below, the district court properly dismissed.

Edwards argued to the district court, as he does on appeal, that the defendants exhibited deliberate indifference to his safety when they allowed him and Davis into the medical unit at the same time despite the separation profile and then failed to intervene in the resulting altercation. Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). But a failure to protect an inmate violates the Eighth Amendment only when prison officials act with "deliberate indifference," *id.* at 834, which requires a showing (1) that the prisoner was "incarcerated under conditions posing a substantial risk of serious harm" (the objective test), and (2) "that the prison official had a sufficiently culpable state of mind, which in prison-conditions cases is one of deliberate indifference to inmate health or safety" (the subjective test). *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (internal quotation marks omitted). The subjective component requires "something more

5

than mere negligence"; it can be met with a showing of criminal recklessness, meaning that the prison official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and … also draw[s] the inference." *Farmer*, 511 U.S. at 835, 837.

Edwards argues on appeal that the defendants were deliberately indifferent to his safety because they should have been aware of the separation profile between him and Davis. The evidence showed that OCPM was responsible for approving and maintaining a central database of separation profiles and, based on that database, MWCI "regularly" compiled, updated, and distributed its own separation lists in all housing units to ensure that inmates who have fought with each other would not encounter one another. OCPM issued a separation profile after the 2012 altercation that remained in force at the time of the 2017 altercation. But the most recent version of MWCI's internal separation list, in effect on the day of the 2017 altercation, did not reflect OCPM's separation profile between Edwards and Davis; Davis had arrived at MWCI only eight days prior. None of the defendants were involved in the maintenance or distribution of MWCI's internal separation lists, and none of them were aware of OCPM's separation profile between Edwards and Davis at the time of the 2017 altercation. It was only

6

after further review that MWCI investigators discovered that Edwards and Davis had an OCPM separation profile.

Thus, the defendants were not "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and could not have actually drawn the inference. *Farmer*, 511 U.S. at 837. Edwards's bare assertion that the defendants "should have known" of the profile does not alter the fact that they did not know about it, and their unawareness did not constitute deliberate indifference. A party cannot avoid summary judgment with "conclusory allegations, speculation or conjecture." *Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020).

With regard to Edwards's § 1983 claim against Black, Edwards argues that the district court erred in holding that a 2014 comment he made to Black about the 2012 altercation did not put Black on notice of the risk Davis posed to Edwards in 2017; he contends that this three-year interval is irrelevant. He is mistaken. Prison officials must "take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). The length of time between an official being put on notice of a prior altercation and the occurrence of a new altercation is relevant in determining whether official action

7

or inaction amounted to a constitutional violation; prison officials are not deliberately indifferent when they fail to act on stale or vague threats of inmate attacks. *Compare id.* at 621 (holding that a three-day period between the notice of a threat and an inmate attack was sufficient to survive summary judgment), *with Brown v. Wood*, 86 F. App'x 463, 464 (2d Cir. 2004) (holding there was no deliberate indifference when eighteen months intervened between a threat and an inmate attack). Here, Edwards provided no other details or context about his 2014 remark to Black, which was too remote in time to provide the requisite notice.

This lack of notice also diminishes the legal significance of Edwards's other assertion that, as he walked to his medical appointment, he heard Black tell staff to send Davis to the medical unit, thus triggering the 2017 altercation. The district court concluded that this "conjecture" was "insufficient to oppose the motion for summary judgment." Ruling on Motion for Summary Judgment, *Edwards v. Semple*, No. 19-CV-85 (D. Conn. May 11, 2020), ECF No. 51 at 15. Edwards argues that the question of whether Black gave this order created a genuine issue of material fact. But the inference that Edwards asked the district court—and now asks us—to draw from Black's statement is that Black knew about the 2012

altercation and knew that putting Davis and Edwards in the same area would prompt Davis to attack Edwards.

Although a court considering summary judgment must construe all evidence and draw all inferences in the non-movant's favor, *see Garcia*, 706 F.3d at 126-27, the inference Edwards asks us to draw is not reasonable because it assumes Black's knowledge of the 2012 altercation and the animosity between Edwards and Davis. Yet it was undisputed that Black did not know about the separation profile between Edwards and Davis, who had been transferred to MWCI eight days earlier. And the vague statement Edwards made to Black in 2014 about the 2012 altercation did not provide the requisite notice to Black about any potential threat Davis posed to Edwards in 2017. We therefore cannot infer that Black was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]." *Farmer*, 511 U.S. at 837. Moreover, the evidence was undisputed that Black did not know about Edwards's other lawsuit and grievances, which consequently could not have motivated Black to arrange the 2017 altercation. Accordingly, the district court properly granted summary judgment on Edwards's claim against Black.

Edwards contends that deliberate indifference is shown by Getchel's failure to intervene immediately in the 2017 altercation. But although prison officials have a duty to ensure the safety of prisoners, they need only take "reasonable measures to guarantee" it. *Id.* at 832. Before intervening to quell an inmate disturbance, officials must therefore consider "the threat to the safety of staff and inmates." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Here, Edwards produced no evidence that Getchel could have safely interceded earlier. Although Edwards asserted that certain video footage would have shown that Getchel could have intervened earlier, he never produced the video in the district court. The only evidence on this subject was Getchel's declaration that he called for assistance and "waited for sufficient staff to respond before intervening, per protocol." Getchel Aff., *Edwards*, No. 19-CV-85, ECF No. 36 at ¶ 10. This accorded with his obligation to heed "the threat to the safety of staff and inmates" before intervening. *Whitley*, 475 U.S. at 321. Thus, the district court properly granted the defendants summary judgment on Edwards's claim against Getchel.

Finally, as to Edwards's § 1983 claim against Nurse Burns, Edwards maintains that Burns (along with Black and Getchel) coordinated Davis's attack. But the defendants submitted Edwards's medical records, Burns's nursing

10

schedule, and an affidavit from Burns, all of which indicated that she was not at work that day and that another nurse treated Edwards. No other evidence corroborated Edwards's bare assertion that the nurse who treated him said her name was Gina. Edwards therefore offers nothing more than speculation in response, so "the record taken as a whole could not lead a rational trier of fact to find" for him on the issue of whether Burns was personally involved in the 2017 altercation. *Bellamy v. City of New York*, 914 F.3d 727, 744 (2d Cir. 2019) (alterations omitted).

## II

We review the denial of leave to amend under an abuse of discretion standard. *Hutchison v. Deutsche Bank Secs. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011). However, "[w]hen the denial of leave to amend is based on a legal interpretation, such as a determination that amendment would be futile, a reviewing court conducts a *de novo* review." *Id.* In February 2019, Edwards moved to amend his complaint to include a supervisory liability claim against OCPM Director Maiga, alleging that he "over[saw] all transfers [and separation] profiles." Proposed Am. Compl., *Edwards*, No. 19-CV-85, ECF No. 10 at 1. The district court granted Edwards leave to amend but dismissed Maiga because Edwards did not allege any

11

facts supporting supervisory liability. In July 2019, Edwards again moved to amend to include the same claim, adding only that Maiga "created a policy and custom under which unconstitutional practices transpired." Second Proposed Am. Compl., *Edwards*, No. 19-CV-85, ECF No. 26 at 1. The district court denied leave to amend, observing that his proposed amended complaint recited the standard for supervisory liability without alleging any supporting facts. Edwards argues that, given the district court's acknowledgement that OCPM created and oversaw separation profiles, it should have permitted him to litigate his supervisory liability claim against Maiga.

Leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a), and district courts should grant pro se plaintiffs leave to amend a complaint at least once, "when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015). However, district courts may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86, 98 (2d Cir. 2019). Generally, "[a] proposed amendment to a complaint is futile when it could not withstand a motion to dismiss," and "[i]n order to survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164-65 (2d Cir. 2015). Under this standard, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 165. Because Edwards's proposed amended complaints contained only conclusory allegations, amendment would have been futile; Edwards had already been granted an opportunity to amend his pleading, and he provided no new facts to cure its initial deficiencies. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming the denial of leave to amend on futility grounds because the plaintiff "has suggested no new material []he wishes to plead" and "[t]he problem ... is substantive"). The district court therefore properly denied leave to amend.

\* \* \*

We have considered Edwards's remaining arguments, which we conclude are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13