21-1384-cv
*Ungar v. City of New York*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of October, two thousand twenty-two.

PRESENT:     JON O. NEWMAN,
                       JOHN M. WALKER, JR.,
                       EUNICE C. LEE,
                               *Circuit Judges*.

-----------------------------------------------------------------

MOSHE UNGAR,

                       *Plaintiff-Appellant*,

                       v.                                                    No. 21-1384-cv

CITY OF NEW YORK, POLICE OFFICER
MICHAEL VICTORIA, SHIELD #25392, POLICE
OFFICER JASON WHYTE, SHIELD #29767,

                       *Defendants-Appellees*. [1]

-----------------------------------------------------------------

For Plaintiff-Appellant:                              ROB RICKNER, Rickner PLLC, New York, NY.

For Defendants-Appellees:                         GEOFFREY STANNARD, Assistant Corporation Counsel, (Richard Dearing and Scott Shorr, *on the brief*) *for* Georgia M. Pestana,

---

[1] The Clerk of Court is directed to amend the caption as reflected above.

Corporation Counsel for the City of New York, New York, NY.

Appeal from the United States District Court for the Eastern District of New York (I. Leo Glasser, *Judge*; Vera M. Scanlon, *Magistrate Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the orders of the district court are **AFFIRMED**.

Plaintiff-Appellant Moshe Ungar sued the City of New York, New York City Police Department officers, and others, under 42 U.S.C. § 1983 and state law, alleging that certain police officers were deliberately indifferent in failing to protect Ungar from an assault that occurred while he was detained at Kings County Central Booking. Ungar moved for spoliation sanctions based upon Defendants-Appellees' failure to preserve surveillance video that may have captured Ungar's assault. The magistrate judge denied Ungar's motion, and on November 2, 2018, the district court denied Ungar's objections. Defendants subsequently moved for summary judgment, and on April 29, 2021, the district court granted Defendants' summary judgment motion in full and dismissed Ungar's § 1983 claims and state law claims. Ungar appeals the May 1, 2021 judgment of the district court and seeks review of those decisions. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision.

I.    **Failure to Protect Claim**

On appeal, Ungar challenges the dismissal of his § 1983 deliberate indifference claim against New York City Police Department Officers Michael Victoria and Jason Whyte, who were

2

the cell attendants at Kings County Central Booking ("Central Booking") when Ungar was assaulted by another detainee, based on their failure to protect Ungar from this assault.[2]

We review a grant of summary judgment *de novo*, construing the evidence in the light most favorable to the opposing party and drawing all reasonable inferences in its favor. *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022). "Summary judgment is appropriate where no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted).

While Ungar was detained at Central Booking, one of his cellmates, Luis Marte, began yelling, banging the walls, and making antisemitic comments at Ungar, including that Jewish people have "money" and "nice cars." Joint App'x 411:19-20. Ungar is a member of the Jewish community, and was wearing traditional Chasidic clothing at the time, including a yarmulke and sidecurls. Marte's conduct went on for ten to fifteen minutes, and during that time, multiple officers told Marte to sit down and "shut up." Joint App'x 417:19-24. Marte then walked up to Ungar and punched him.

A pretrial detainee's claim for unconstitutional conditions of confinement is governed by the Fourteenth Amendment Due Process Clause, *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017), which requires that officers "take reasonable measures to guarantee the safety of the inmates," including by protecting "prisoners from violence at the hands of other prisoners," *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citation and internal quotation marks omitted);

---

[2] Ungar does not challenge the dismissal of his *Monell* claim, his failure to intervene claim, his deliberate indifference to medical needs claim, and the dismissal of claims against Defendant-Appellees Gonzalez, Peralta, Robles, and Franklin. We therefore consider those claims abandoned. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995).

*see Darnell*, 849 F.3d at 29 ("A detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983))). To succeed on his failure to protect claim, Ungar must show (1) "that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"; and (2) that the officers "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate" the risk posed to Ungar even though the Officers "knew, or should have known, that the condition posed an excessive risk to" Ungar's safety. *Darnell*, 849 F.3d at 29, 35. In other words, Ungar must show that the officers were deliberately indifferent to the risk posed to Ungar.

Regarding the first prong, which requires a "substantial risk of serious harm," *Lewis v. Siwicki*, 944 F.3d 427, 431 (2d Cir. 2019), Ungar argues that the district court erred in finding that Ungar failed to show a substantial risk of harm because a verbal exchange alone is insufficient to make such a showing. Although Marte directed offensive comments at Ungar, the record does not reveal that Marte made any threats of physical harm to Ungar. We need not resolve whether a verbal exchange alone can present a substantial risk of harm—and certain cases suggest that it may, *see, e.g.*, *id.* at 432–33—because we conclude that Ungar cannot show that, even assuming Ungar faced a substantial risk of serious harm, the officers recklessly failed to act.

There is no genuine dispute of material fact as to whether Officers Whyte and Victoria were deliberately indifferent to the risk posed by Marte. Ungar remained in the cell with Marte for thirteen to fourteen hours without incident, Ungar never mentioned Marte's conduct to any official, and Ungar himself testified that Marte "basically walked up to [him] and gave [him] a punch out of nowhere." Joint App'x 411:22-23. We have previously held that even where officers

4

overhear a soon-to-be assailant making offensive comments to another inmate, this was insufficient to put officers on notice to a substantial risk of serious harm. *See Dennis v. Westchester Cnty. Jail Corr. Dep't*, 485 F. App'x 478, 481 (2d Cir. 2012). And although Ungar's failure to alert the Officers to Marte's conduct is not dispositive, *see Farmer*, 511 U.S. at 848, in many of those cases where we have found a plaintiff's showing of deliberate indifference sufficient to survive summary judgment, the plaintiff alerted officials to his fear of harm, *see, e.g.*, *Morgan v. Dzurenda*, 956 F.3d 84, 90 (2d Cir. 2020) (inmate submitted forms to officials stating that he had been threatened and feared for his safety); *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 621 (2d Cir. 1996) (inmate repeatedly informed officials that he was in danger and requested transfer).

Furthermore, where prison officials know of a substantial risk to inmate health or safety, they "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Here, Ungar suggests that one of the officers told Marte to be quiet and sit down. Given that Marte's conduct involved yelling and making offensive comments—none of which involved threats of physical violence—no reasonable jury could find that the officer's response was unreasonable. *Cf. Hayes*, 84 F.3d at 621 (genuine dispute existed as to the reasonableness of defendants' protective measures where inmate had been assaulted, repeatedly expressed his fears, and requested a transfer). Because no reasonable jury could find that Ungar was detained under conditions posing a substantial risk of serious harm or that, in any event, Officers Whyte and Victoria were deliberately indifferent to that risk, assuming such a risk existed, we find that Defendants are entitled to judgment as a matter of law.

**II.      Rule 37 Sanctions**

Ungar also challenges the ruling denying Ungar's motion for sanctions based on the Defendants' failure to preserve surveillance video that could have shown the assault.

We review the denial of a Federal Rule of Civil Procedure 37 motion for spoliation sanctions for an abuse of discretion. *Lore v. City of Syracuse*, 670 F.3d 127, 174 (2d Cir. 2012). "A district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 627 (2d Cir. 2018) (citation omitted).

As relevant here, Rule 37(e)(1) provides that where "electronically stored information that should have been preserved in the anticipation . . . of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced," the court "upon finding prejudice to another party from loss of the information, *may* order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1) (emphasis added).[3] A district court has wide discretion in determining whether spoliation sanctions are appropriate. *See Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001).

---

[3] Ungar does not appear to challenge the magistrate judge's and district court's decisions to apply the amended Rule 37(e), which went into effect in 2015, retroactively, or their findings that Defendants did not intend to deprive Ungar of the video; therefore, we do not revisit those well-reasoned decisions here.

On appeal, Ungar primarily argues that the district court abused its discretion in finding that there was no prejudice to Ungar. We disagree. Given the broad discretion afforded to the district court, and the permissive nature of Rule 37(e)(1), we find that the district court did not clearly err in concluding that Ungar failed to offer proof that the video would have corroborated Ungar's claims, and thus sanctions were unwarranted. Following a hearing, the magistrate judge found that the surveillance video did not have an audio track that could have recorded the alleged anti-Semitic remarks or the officers' alleged response and that Ungar failed to establish that the location of the camera would have captured the assault and the officers' failure to protect him. These findings adequately support the decision to deny Rule 37(e) sanctions.[4]

We have considered Ungar's remaining arguments and conclude that they are without merit. For the foregoing reasons, the orders of the district court are AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] Additionally, we reject Ungar's suggestion that the prejudice caused by Ungar having to litigate the sanctions issue is sufficient to fulfill Rule 37(e)(1)'s requirement that the movant be prejudiced by the loss of information. As Defendants point out, adopting such an approach would mean that prejudice would be present any time spoliation was litigated. In any event, Ungar likely waived this argument. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (internal quotation marks and citation omitted, alteration in original)).